KINNEY *v.* SMART.

4-4609

Opinion delivered April 26, 1937.

Appellant, *pro se.*

*John E. Swepston,* for appellee.

HUMPHREYS, J. On January 16, 1934, appellant rented 230 acres of land in Crittenden county from appellee for the year, 1934, to cultivate in cotton. Appellant cultivated the land in 1933 and after the crops were gathered he began to plow the land for the next year and had plowed most of it before all the terms of the rent contract had been agreed upon. The day before the written rental contract was executed appellee signed a rent reduction contract to the United States Government for a part of said land in connection with and in furtherance of the production control movement. The written rent contract between appellant and appellee contained the following provision:

"It is mutually agreed that the amount of the land that will be planted in cotton will necessarily have to be reduced, proportionate to Government requirements and contracts already signed, * * *."

The written rental contract between appellee and appellant also provided that the rent should be paid out of the first cotton, the amount being fixed at 17,500 lbs., or 35 bales of 500 lbs. average; that all the cotton was to be ginned and warehoused in the name of appellee and the warehouse receipts turned over to appellee at the time of warehousing until the rental was paid in full; that after the payment of the rent, all cotton should be turned over to appellee until the furnishing account was paid, and that all Government money should go to appellant.

On April 21, 1934, the Congress passed the Bankhead act providing for a tax on all cotton raised from the, 1934, crop and ginned therefrom in excess of ten million bales. In enforcing the act, the Government adopted a plan of issuing coupons to be used by the ginners in certifying as tax free such number of pounds of cotton as the contract entered into between the producer and the Government showed to have been the average production of the land covered by the particular contract over the base period of five years, from 1928 to 1932, each inclusive. The plan was to issue the tax exemption certificates to the producers in accordance with their several interests in the tax exempt cotton which saved the producers from

paying a process tax thereon. Under the plan the total amount of tax exemption certificates apportioned to the land rented by appellee to appellant was 21,225 pounds. Appellee applied for and procured these tax exemption certificates and used 17,500 pounds in certifying as tax free the 35 bales of rent cotton, and a part of them in certifying as tax free so much of the cotton as was necessary to pay for what appellee had furnished appellant, and turned the balance of them over to appellant's attorney.

The whole crop produced on the land was 38,116 pounds and the total issue of exemption certificates on said land was 21,225 pounds. The number of pounds used by appellee in certifying as tax free his rent cotton was 17,500 pounds, or 7,755 pounds more than appellant claims appellee was entitled to as landlord under the provisions of the Bankhead act and the instructions and regulations issued and promulgated by the Government pertaining thereto. This claim is based on the theory that under said act and regulations appellant was a "managing share tenant." He brought suit on that theory for the amount claimed and the trial court, upon a hearing, dismissed his complaint and from the decree of dismissal he has appealed to this court.

The main question to be determined, therefore, on this appeal is whether under the rental contract between appellee and appellant, appellant is a "managing share tenant" under the provisions of the Bankhead act and the instructions and regulations pertaining thereto. Under said act and the instructions and regulations pertaining thereto, a "managing share tenant" is defined as follows:

"Any person, commonly known as a share tenant, engaged in the production of cotton who pays rent for the land he farms by (1) a share of the cotton produced on such land or (2) a share of the proceeds of the cotton produced on such land. A share tenant usually furnishes the labor, animals, equipment incident to the production and harvesting of cotton and usually pays as rent one-third of the grain crop and one-fourth of the cotton crop,

or one-third of both the grain crop and one-fourth of the proceeds of the cotton crop,'' and a ''standing rent tenant'' is defined as follows:

''The term 'standing rent tenant' shall mean any person who rents land as a tenant and pays as rent a fixed quantity of products.''

The rent contract between appellant and appellee provides that appellee shall receive 35 bales of average weight of 500 pounds totaling 17,500 pounds of lint cotton. The contract provides for a fixed amount of cotton for rent to be ginned and delivered to the warehouse in appellee's name. There was no sharing between them of a proportionate part of the crops raised, such as one-fourth of the cotton, one-third of the corn, etc.

Under the definitions of a ''managing share tenant'' and a ''standing rent tenant'' set out above appellant was a ''standing rent tenant'' and not a ''managing share tenant.''

Appellant, being a ''standing rent tenant,'' was entitled to apply for and receive all the tax exemption certificates from the Government, but without objection on his part appellee applied for and received all the tax exemption certificates. There is nothing in the record to indicate that appellee perpetrated a fraud or intended to perpetrate a fraud on appellant or the Government in making the application for or receiving said certificates. After receiving them he used as many of them as was necessary to have his 35 bales ginned as tax free cotton, and as many as were necessary to have cotton coming to him for supplies, etc., ginned as tax free cotton, and delivered the balance of the certificates to appellant's attorney. The rent contract between appellant and appellee necessarily implies that had appellant received all these certificates himself he would have been compelled to use them for the same purposes appellee used them. Otherwise appellant could not have had the 35 bales ginned and delivered in the warehouse as tax exempt cotton to appellee. Appellee was entitled under his contract to have his 35 bales of cotton in payment of supplies, etc., furnished by him delivered to him without

being compelled to pay the process tax thereon. Since the duty rested on appellant to pay the process tax, or in lieu thereof to deliver the exemption tax certificates to the ginner, he was not damaged by the delivery of the certificates to the ginner by appellee. Under his contract he got the benefit of the tax exemption certificates and cannot recover the value of them from appellee.

The court was, therefore, correct in dismissing his complaint, so the decree is affirmed.